UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Dewey Kingsley,

    Plaintiff,

v.                                                                Case No. 07-10593

J.H.O.C., Inc.,                            Honorable Sean F. Cox

    Defendant.

_____/

**OPINION & ORDER
GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION**

Following an alleged injury on the job in a truck-related accident at a distribution center where he was working, Plaintiff filed this action against Defendant. Defendant filed an early Motion for Summary Judgment, wherein it asserted that it is Plaintiff's "co-employer" under Michigan's Workers Disability Compensation Act ("WDCA") and that worker's compensation benefits are therefore Plaintiff's sole remedy. This Court denied that motion in a written Opinion & Order dated December 12, 2007. The matter is currently before the Court on Defendant's Motion for Reconsideration, filed pursuant to Rule 7.1(g) of the Local Rules for the United States District Court, Eastern District of Michigan. The parties have fully briefed the issues and the Court heard oral argument on Defendant's Motion for Reconsideration on March 13, 2008. As explained more fully below, the motion shall be granted and the Court shall grant summary judgment in favor of Defendant because the evidence in this action is susceptible of one inference only – that this is a labor-broker situation and that Defendant was Plaintiff's "co-employer" under the economic realities test, thereby barring Plaintiff's claims in this action.

1

Standard of Decision:

Local Rule 7.1(g) provides that a motion for reconsideration should only be granted if the movant demonstrates that the Court and the parties have been misled by a palpable defect and that a different disposition of the case must result from a correction of such a palpable defect. L.R. 7.1(g). Local Rule 7.1(g) further provides that "the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication."

## ANALYSIS

Michigan's WDCA provides that "the right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer." M.C.L. § 418.131. Michigan courts have recognized that more than one entity can be considered a particular employee's employer for purposes of the WDCA's exclusive remedy. *Kidder v. Miller-Davis Co.*, 455 Mich. 25, 41-42 (1997). Where a worker is found to have a co-employer, both employers are protected under the exclusive remedy provision of the Act. *Id.* Thus, if JHOC is considered Plaintiff's co-employer under the WDCA, Plaintiff's sole remedy against JHOC is worker's compensation benefits and this action against JHOC is barred.

Both parties agree that the economic realities test is applied to determine if JHOC is considered Plaintiff's co-employer. The economic realities test includes four elements: 1) control of a worker's duties; 2) the payment of wages; 3) the right to hire and fire and the right to discipline; and 4) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal.

The question of whether a party is a plaintiff's co-employer is a question of law for the

court and not one of fact the jury when the evidence and facts are susceptible of one inference only. *Kidder v. Miller-Davis Co.*, 455 Mich. 25, 41-42 (1997). Only when evidence of a putative employer's status is in dispute, or when conflicting inferences may reasonably drawn from the facts, is the issue one for the trier of fact. *Clark v. United Technologies Automotive, Inc.*, 459 Mich. 681, 693-94 (1999).

In this Court's Opinion denying Defendant's Motion for Summary Judgment, although the Court concluded that this case involves a labor-broker situation, it concluded that the evidence with respect to the first and third elements of the economic control test (control of a worker's duties and right to hire, fire and discipline) was not reasonably susceptible of but a single inference, but rather, that there were conflicting inferences that may reasonably be drawn from the evidence presented with respect to those two factors.[1]

1.      Control of Duties:

With respect to control of duties, the Opinion cited *Kidder* for the proposition that whether an alleged employer controls a worker's duties requires consideration of factors such as whether the alleged employer controlled the hours on the job and determined where the workers would be working, whether it supervised the workers at the worksite, and whether it furnished

---

[1]The Opinion did not specifically address the two remaining factors ( the payment of wages and the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal) because the Court concluded that the evidence was not conflicting as to those two factors and weighed in Defendant's favor. The Court remains satisfied that those two factors weigh in favor of finding that Defendant is Plaintiff's co-employer. First, although MTS paid Plaintiff's wages, that is a distinction without a difference because the record establishes that JHOC reimbursed MTS for the actual amount of wages and worker's compensation insurance premiums that were paid by MTS. Thus, in this labor-broker situation, MTS was a "payment conduit" for JHOC. *See e.g., Currie, supra*, at *3. Second, regarding the work performed, the Court agrees that the only inference that can be drawn from the record in this case is that a common objective was undertaken by MTS and JHOC. *Id.*

3

the appropriate equipment for the workers to perform their work. *Kidder*, 455 Mich. 42-44. The Opinion concluded that the evidence on this issue was susceptible of conflicting inferences. That conclusion was based on a consideration of the evidence relating to: a) who was responsible for the supervision and training of employees like Plaintiff and b) the ownership of the switcher vehicles at the worksite.

    a.    <u>Supervision and Training</u>:

In its Motion for Reconsideration, Defendant contends that shared control of supervision and training is sufficient to support a finding that JHOC and MTS are co-employers of Plaintiff. It asserts that exclusive control is not required under Michigan law. It contends that Harry Owlsey's affidavit establishes at least shared control between JHOC and MTS:

> 8. The switchers, including Dewey Kingsley, were required to report through my assistants to me, such reporting including injuries, accidents, job performance related information, etc.
> . . . .
> 12. I had the right to require switchers such as Dewey Kingsley to comply with my instructions and directions, and did exercise that right.
> . . . .
> 15. All employees of MTS/J.H.O.C. at the Kmart yard of a supervisory nature who provided direction or otherwise assisting in controlling the day-to-day activities of the switchers, including Dewey Kingsley, were controlled by and reported to me.

In sum, the evidence submitted to the Court indicated that Harry Owlsey ("Owlsey") did not directly supervise employees from MTS at the Center. Rather, Plaintiff was supervised by Chris Exel ("Exel"), a worker who was paid with an MTS paycheck. Owlsey states that he designated some workers, such as Exel, as "Switch Leaders" who supervised the other workers and even evaluated them, although the Switch Leaders still reported to and took direction from Owlsey.

4

The question, therefore, is whether sufficient control is exercised where the alleged co-employer does not itself directly supervise the worker, but rather, does so through other employees of the labor-broker. The cases cited by the parties in their summary judgment briefs did not squarely address that issue.

In researching this issue, the Court saw that in most cases dealing with the application of the economic realities test in a labor-broker situation, the Plaintiff labor-broker employee was directly supervised by an employee or employees of the labor-broker customer that is asserting co-employer status. *See e.g., Tolbert v. U.S. Truck Co.*, 179 Mich.App. 471, 487 (1989)(noting that the decedent "operated under the direction and supervision of an employee of [the labor broker customer]"); *White v. Central Transport, Inc.*, 150 Mich.App. 128, 130 (1986)(noting labor broker customer was in control of the drivers' daily activities and his immediate supervisor was a manager employed by the labor broker); *McGowan v. TRW, Inc.*, 2001 WL 690649 (Mich.App. 2001)(noting that plaintiff was at all times under the supervision of the labor-broker customer's permanent security guards and did as they instructed.)

Prior to issuing its Opinion, the only case that the Court was able to find that addresses this specific issue (*i.e.*, whether sufficient control is exercised where the alleged co-employer does not itself directly supervise the worker, but rather does so through other contract workers) was *Auger. Auger v. ABB Flexible Automation, Inc.*, 34 Fed.Appx. 160, 163 (6th Cir. 2002). In *Auger*, an unpublished Sixth Circuit decision applying Michigan law, the Court appeared to answer that question in a favorable way to Plaintiff.

In that case, the appellate court reversed the district court's entry of summary judgment in favor of the alleged co-employer in an alleged labor-broker situation because it concluded that

5

the evidence was capable of conflicting inferences. As to the issue of control of duties, the Court found that a genuine issue of fact existed. It stated, in pertinent part, as follows:

> In the present case, [Plaintiff] was directly supervised on-site by Seedorf, the MTE supervisor [who was employed by the labor broker]. As stated above, although defendant claims that its supervisor Bourdeaux had ultimate control over the MTE workers, the record indicates that Bordeaux communicated with [Plaintiff] through Seedorf. There is no evidence that plaintiff was ever directly instructed or controlled by [the labor broker customer's] employees.

*Auger,* 34 Fed.Appx. at 166. The court concluded that "[u]nder these facts, considerable uncertainty remains as to whether the degree of control retained by ABB rises to the requisite level." *Id*.

Upon researching the issue further, however, the Court has located a Michigan case that clearly supports Defendant's position that shared control (i.e., controlling workers indirectly through their supervisors) is sufficient.

In *Currie*, the trial court denied summary judgment to the defendant on the issue of whether it was a co-employer of the plaintiff. *Currie v. National Metal Ins. Co.*, 2000 WL 33533987 (Mich.App. 2000). The Michigan Court of Appeals reversed, concluding that the defendant was a co-employer under the economic realities test. With respect to the issue of control of workers, the opinion states:

> First, the record indicates that both Amstaff [the labor broker] and National Metal [the labor broker customer] shared control of the workers at the plant. Although the plant manager and supervisors were Amstaff Employees, National Metal did not relinquish ultimate supervision or control over the steel pickling plant. Jim Alexsa, present of National Metal, averred that although Joe Pulis, the plant manager, was responsible for the 'day-to-day' plant operations, Alexsa gave instructions to Pulis on a daily basis and controlled Pulis' daily activities . . . Pulis averred that he and his supervisors, all Amstaff employees, instructed the workers with regard to their day to day activities. However, Pulis admitted that Alexa controlled his day to day activities at the plant . . . Clearly, even though Amstaff

6

employees were very involved in the supervision of the workers, National Metal
maintained ultimate control over the pickling plant.

*Currie, supra*, at *2.

Thus, the Court is faced with two opinions dealing with the specific issue presented here, and very similar facts, in a contradictory manner. After studying both cases, the Court believes that it placed too much weight on the unpublished opinion in *Auger*. No other decisions have cited or relied on *Auger*, and the opinion itself was not unanimous. The dissent in *Auger* concluded that the defendant was a co-employer and indicated that the fact that the defendant (the labor broker customer) used a working leader or "straw boss' who was employed by the labor broker to give assignments did not alter the conclusion because the labor broker customer was still in ultimate control at the work site. Moreover, the facts in *Currie* relating to supervision and control are nearly identical to those seen here.

The Court concludes that it placed too much weight on *Auger*, and that the *Currie* decision is more in line with the underlying rationale of the economic realities test as it is applied under Michigan law in labor-broker situations. The Court concludes that the evidence here shows, at least, that there was shared control over supervision and training, such that this factor weighs in favor of finding that Defendant is Plaintiff's co-employer.

b. Ownership of Vehicles (Switchers):

Ownership of vehicles is another important factor. As the original Opinion noted, Owsley testified that he did not know who owned the switch horses, the primary equipment that is used by switchers at the center. (Opinion at 40).

In its Motion for Reconsideration, Defendants contend that the Court erred because the

evidence shows that JHOC owned the switchers. The evidence relied on by Defendant on this issue is the affidavits of Ken Walker and Timothy Pilato stating that "Employees under the Agreement are required to use vehicles owned and maintained by J.H.O.C." (Walker Affidavit at ¶ 16; *see also* Pilato Affidavit at ¶ 16).

At the March 13, 2008 hearing, Plaintiff's counsel indicated that Plaintiff does not dispute that JHOC owned the switchers at the Center. Moreover, Defendant has submitted a supplemental affidavit (Docket Entry No. 40 ) that clarifies that JHOC actually owned the switchers at the Center.

Accordingly, this factor also weighs in favor of finding that Defendant is Plaintiff's co-employer.

2.  Right to Hire, Fire and Discipline:

The second factor requires consideration of the evidence relating to the right to hire, fire and discipline workers.

    a.  Hiring:

The Court's original Opinion stated that it was undisputed that MTS initially hired Plaintiff. That statement was based on Plaintiff's affidavit that he was initially hired by Plaintiff. After further consideration of the issue, however, the Court agrees that Plaintiff's hiring can really only be considered a "shared" factor under the circumstances of this labor-broker case.

If you ask each party who "initially hired" Plaintiff, each emphasizes the role of either MTS or JHOC: 1) Plaintiff emphasizes that he initially applied for work with MTS, filled out his employment application with MTS and secured his assignment through MTS; 2) while Defendant emphasizes that Plaintiff had no actual job to work at until Defendant approved

Plaintiff, that Plaintiff could not work at JHOC until it approved his application, and that without Defendant, Plaintiff would not have not earned any income.

Both points are well taken and emphasize the shared nature of this factor in a labor-broker situation such as this. *See e.g. Fitzgerald v. Mobil Oil Corporation*, 827 F.Supp. 1301 (E.D. Mich. 1993)(noting that approval by labor broker customer was a condition precedent to plaintiff working for the labor broker customer and that without its approval, Plaintiff could not have begun any work). That is, that both MTS and JHOC played important roles in Plaintiff's hiring and one without the other would have accomplished nothing.

  b. <u>Discipline and Firing</u>:

In reviewing the cited portions of Owlsey's deposition testimony that were submitted with the summary judgment briefs, the Court noticed that he testified that he had been working at the Center for more than 20 years. It was the Court's understanding from that testimony, along with some language in his affidavit, that Owlsey had been working for JHOC at the Center for more than 20 years.

Both parties agree, however, that is simply not the case. In fact, Owlsey was formerly employed by Kmart and worked for Kmart at the Center for more than 20 years. He later went to work for JHOC, and also worked at the Center in that capacity, but only held that position for 2 years.

In *Auger*, the Court emphasized that objective evidence relating to the exercise of the right to fire or discipline must be considered instead of an employer's inchoate unexercised rights. *Auger, supra*, at 166. If Owlsey had been working in his same position for JHOC at the Center for 20 years, given the nature of his testimony (that he could not remember the nature of

9

any discipline he may have imposed and indicated he at most gave verbal warnings, and that he could recall having only fired one switcher), that could be considered more akin to a situation with unexercised inchoate rights. In reality, however, the parties agree that Owlsey only worked for JHOC at the center for 2 years - not 20 years. That is an important distinction and, thus, the Court concludes that the fact that he may have only exercised his right to fire one switcher while employed, or given only verbal warnings, cannot be considered as susceptible to conflicting inferences.

Finally, while the *Auger* court asserted that "[s]ending an employee home is not synonymous with firing" the Court concludes that the better approach to this consideration is seen in *Fitzgerald,* which noted:

> However, the fact remains that plaintiff was hired for a specific job. If Mobile Oil [the labor broker customer] had terminated his services he would have been without an assignment, at least temporarily. The power to stop plaintiff from engaging in the daily tasks he relied on for wages is enough to satisfy the test.

*Fitzgerald, supra*, at 1304.

Thus, with respect to this factor, the Court agrees with Defendant that the Court was misled by a palpable defect. In light of the fact that Owlsey was employed by JHOC at the Center for only 2 years, the Court concludes that the evidence on this factor is not susceptible to conflicting inferences, but rather, also weighs in Defendants' favor.

## CONCLUSION & ORDER

For these reasons, the Court concludes that it should have granted Defendant's Motion for Summary Judgment because the evidence presented in this case is susceptible of but one inference – that this is a labor-broker situation and that Defendant is considered Plaintiff's co-

employer under Michigan law. As such, Plaintiff's sole remedy against Defendant is worker's compensation benefits and this action against Defendant is therefore barred.

Accordingly, **IT IS ORDERED** that Defendant's Motion for Reconsideration is hereby **GRANTED. IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's claims against Defendant shall be dismissed with prejudice.

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: March 26, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 26, 2008, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager